**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAUL ROBLES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18-CV-4379 |
| | ) | |
| vs. | ) | Judge |
| | ) | Magistrate Judge |
| CITY OF CHICAGO, a municipal corporation; | ) | |
| Chicago Police Officers | ) | |
| DAVID SALGADO, Star 16347; | ) | |
| XAVIER ELIZONDO, Star 1304; | ) | |
| ROBERTO RAMIREZ, Star 12261; | ) | |
| PETER THEODORE, Star 10523; | ) | |
| BRYAN COX, Star 19328, Star 19328; | ) | |
| BENJAMIN MARTINEZ, Star 14519; | ) | |
| ROCCO PRUGER, Star 15445; | ) | |
| GEORGE NICHOLS, Star 19184; | ) | |
| JOSEPH FOLEY, Star 3711; | ) | |
| JACK LIN, Star 11860; and | ) | |
| LOUIS SZUBERT, Star 15620, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.      This is an action for money damages brought pursuant to 42 U.S.C. § 1983.

2.      Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

### Parties

4.      Plaintiff is a resident of Chicago, Illinois.

5.      Defendant-Officers are duly appointed and sworn Chicago police officers. At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

1

6.      The Defendant-Officers are sued in their individual capacities.

7.      Defendant CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

## Introduction

8.      This case involves allegations against police officers who worked and some that still currently work for the Chicago Police Department. These officers were part of the 6713 Team. The 6713 Team was a 10th District Gang Enforcement Unit that carried out numerous search warrants in the City of Chicago. The incident alleged below was part of a pattern and practice of Defendants XAVIER ELIZONDO ("Defendant ELIZONDO") and DAVID SALGADO ("Defendant SALGADO"), who essentially ran a robbery ring which entailed illegally entering persons' homes through bogus search warrants; conducting illegal searches of homes, vehicles, and persons; false arrests; stealing narcotics and money; and using intimidation and threats in order to extort narcotics and money as well as cover up the officers' own illegal conduct.

On May 10, 2018, Defendants ELIZONDO and SALGADO were arrested and charged via a federal indictment with embezzlement and conspiracy to commit theft. Unfortunately, these indictments came too late to protect Plaintiff and other civilians within the City of Chicago from these Defendants. The "code of silence" within the Chicago Police Department ("CPD"), which was recognized and acknowledged by Mayor Rahm Emanuel in December 2015, allowed these officers, along with other Chicago police officers, to run afoul of the United States Constitution without fear of retribution from the CPD or the City of Chicago. These widespread policies and customs of the CPD and City of Chicago were the moving force behind the Defendants' misconduct which ultimately led to the deprivation of Plaintiff's civil rights.

### Facts

9.      On July 7, 2016, the Defendant-Officers, lead by their sergeant, Defendant ELIZONDO, executed a "J.Doe" search warrant at Plaintiff's residence.

10.     The target for the search warrant was Plaintiff's son.

11.    Defendants ELIZONDO and SALGADO, and their gang team, would routinely use a confidential informant to obtain "J.Doe" search warrants.

12.    Defendants ELIZONDO and SALGADO would pay their confidential informants to use them to get "J.Doe" search warrants.

13.    Defendants ELIZONDO and SALGADO, and their team, would submit materially false "J.Doe" search warrants and would have individuals posing as "J.Doe" confidential informants provide false information to state court judges, in order to fraudulently obtain search warrants that would enable the Defendant-Officers to enter and seize property at various locations around the City of Chicago, including Plaintiff's residence.

14.    On July 7, 2016, Plaintiff was home when the Defendant-Officers executed the search warrant.

15.    When the Defendant-Officers entered Plaintiff's residence, Plaintiff was seized and not free to leave.

16.    During the execution of the search at Plaintiff's residence, the Defendant-Officers found money, jewelry, and firearms.

17.    The firearms and some of the money belonged to Plaintiff.

18.    Plaintiff had a valid FOID card and a concealed carry license.

19.    Plaintiff was also licensed with the Illinois Department of Financial and Professional Regulations for a Permanent Employee Registration Card ("PERC").

20.    The Defendant-Officers did not inventory all of the money they recovered from Plaintiff's residence.

21.    The Defendant-Officers did not inventory the jewelry they recovered from Plaintiff's residence.

22.    Defendant ELIZONDO seized two bullet proof vests that Plaintiff used when he worked as an armed security guard.

23.    The Defendant-Officers also seized some of Plaintiff's firearms and a baton.

24.    While executing the search warrant, the Defendant-Officers drank a case of Plaintiff's Gatorade.

25.    Plaintiff was forced to sign an evidence log regarding his seized firearms and

vests.

26.     Plaintiff was never charged with any criminal charges as a result of the execution of the search warrant.

27.     On July 15, 2016, Plaintiff filed a complaint with the City of Chicago regarding the money and jewelry that was stolen during the execution of the search warrant.

28.     The Bureau of Internal Affairs opened a formal investigation into Plaintiff's complaint.

29.     The Bureau of Internal Affairs investigation was a sham and the investigator did not take any reasonable steps to investigate Plaintiff's complaint. The investigation was closed as "unfounded."

30.     Each individual Defendant-Officer acted willfully, wantonly, maliciously, oppressively, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

31.     As a direct and proximate result of the acts of the Defendants described above, Plaintiff has suffered and continues to suffer damages including loss of physical liberty, emotional distress, pain and suffering, and monetary losses including attorney's fees, and property damage.

## COUNT I
### (42 U.S.C. § 1983 – Unreasonable Search of Home)

32.     Plaintiff realleges paragraphs 1 through 31 as if fully set forth herein.

33.     The Defendant-Officers searched Plaintiff's home.

34.     The Defendant-Officers prepared a knowingly false "J.Doe" search warrant for Plaintiff's residence.

35.     The Defendant-Officers did not have a valid search warrant, consent, exigent circumstances, or any other legal justification to search Plaintiff's home.

36.     Searching Plaintiff's home without any legal justification violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches.

WHEREFORE, Plaintiff asks that this Honorable Court:

4

a)  Enter judgment against Defendant-Officers,

b)  Award Plaintiff compensatory and punitive damages,

c)  Award attorneys' fees and costs, and

d)  Award any further relief that this Honorable Court deems just and equitable.

## COUNT II
### (42 U.S.C. § 1983 – Civil Conspiracy)

37.  Plaintiff realleges paragraphs 1 through 31 as if fully set forth herein.

38.  The Defendant-Officers knowingly and intentionally schemed and worked together in a common plan to illegally search Plaintiff's house, and steal money and property from him.

39.  The Defendant-Officers committed overt acts in furtherance of this conspiracy, which included fabricating evidence, providing false information in sworn reports, and providing false evidence to state court judges to obtain "J.Doe" warrants.

40.  The Defendant-Officers then conspired and acted together to cover up their misconduct.

41.  The actions of the Defendant-Officers were committed intentionally, with malice, willfulness, wantonness and reckless indifference of the rights of Plaintiff.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)  Enter judgment against said Defendant-Officers,

b)  Award Plaintiff compensatory and punitive damages, as determined at trial,

c)  Award Plaintiff attorney's fees and costs,

d)  Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT III
### (42 U.S.C. § 1983 – *Monell* Claim against Defendant City of Chicago)

42.  Plaintiff realleges paragraphs 1 through 31 as if fully set forth herein.

43.  The CPD is a subsidiary division of the Defendant CITY OF CHICAGO.

44.     The CITY maintains and exercises exclusive control over the CPD, its policies and procedures, as well as the conduct of all its employees, including the Defendant-Officers.

45.     The Independent Police Review Authority ("IPRA") is a subsidiary of Defendant CITY OF CHICAGO during all times relevant to this Complaint. The CITY maintained and exercised exclusive contract over IPRA, it policies and procedures, as well as the conduct of its employees.

46.     Prior to the incident involving Plaintiff above, the CPD and IPRA had received numerous civilian complaints that Defendants ELIZONDO and SALGADO, and members of their gang team, were engaging in robbery and extortion during the execution of search warrants.

47.     In November of 2012, a civilian filed a complaint with the CPD (CR#1058216) alleging that Defendant SALGADO and other members of his team stole money during the execution of a search warrant. The result of the complaint was that it was closed as "unfounded."

48.     April 3, 2012, a civilian filed a complaint with the CPD (CR#1049392) alleging that Defendant PRUGER stole money during a search of his vehicle. The result of the complaint was that it was closed as "not sustained."

49.     On July 2, 2013, a civilian filed a complaint with the CPD (CR#1063170) alleging that Defendant PRUGER, along with members of his team, stole money during the execution of a search warrant. There was no discipline as a result of this complaint.

50.     On June 3, 2016, a civilian filed a complaint with the CPD (CR#1080775) alleging that Defendants RAMIREZ, COX, MARTINEZ, PRUGER and THEODORE stole money during the execution of a search warrant. The result of the complaint was that it was closed as "not sustained".

51.     Defendant CITY,  CPD, including IPRA and the Internal Affairs Division knew about the illegal conduct of the Defendant-Officers from at least 2012 if not earlier.

52.     Defendant CITY had the power and opportunity to prevent these Defendant-Officers from continuing to engage in the above-described wrongdoing.

53.     Defendant CITY deliberately chose to turn a blind eye to the pattern of wrongdoing by these Defendant-Officers.

54.     The recent indictments of Defendants ELIZONDO and SALGADO detail

multiple instances of this behavior which is indicative of the pattern and practice alleged here.

55.     At no time prior to this federal indictment were either Defendants ELIZONDO and SALGADO, or the other Defendant-Officers, disciplined or sanctioned in any manner for the criminal conduct that was alleged in the indictment.

56.     At all relevant times, CPD maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the CITY caused it officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

57.      Before the incident alleged by Plaintiff, policymakers for the CITY knew that the CPD's polices or custom for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

58.     Despite their knowledge of the CITY's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

59.     As a direct and proximate result of the CPD's inadequate policies or customs for disciplining, supervising, and controlling its officers and the policymakers' failure to address these problems, the Defendant-Officers continued to engage in robbery and illegal searches, including but not limited to the illegal search and seizure of Plaintiff and his property.

60.     At all relevant times, the CPD maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the CPD.

61.     The "code of silence" facilitated, encouraged, and enabled the Defendant-Officers to engage in egregious police misconduct for many years, knowing that their fellow officers would conceal their widespread wrongdoing.

62.     Defendants ELIZONDO and SALGADO and their team are not the first Chicago Police Officers who were allowed to abuse citizens with impunity over a period of years while the city turn a blind eye.

63.     One example of this widespread practice is convicted felon and former Chicago Police officer Ronald Watts. Sergeant Watts and his tactical team at the Ida B. Wells Homes ran

a criminal enterprise of robbery, extortion and illegal searches. Sergeant Watts was criminally charged in federal court in February 2012, after shaking down a federal informant Sergeant Watts believed to be a drug dealer. Sergeant Watts plead guilty in 2013.

64.     Another example of this widespread practice is convicted felon and former Chicago police officer Jerome Finnigan, who was convicted and sentenced on federal criminal charges in 2011. Mr. Finnigan was a member of the notorious Special Operations Section of the CPD which carried out robberies, home invasions and unlawful searches and seizures. At his sentencing, Mr. Finnigan claimed that his bosses knew what he was doing out on the street and encouraged him to continue to policing in the manner in which he did.

65.     In the case of *Obrycka v. City of Chicago, et.al.*, No. 07-cv-2372 (N.D. Ill)., a federal jury found that as of February 2007 "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

66.     In April 2016, the City Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

67.     In an official government report issued in January 2017, the United States Department of Justice found that a "code of silence exits, and officers and community members know it."

68.     The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, the Task Force, and the Department of Justice was also in place when Plaintiff suffered the illegal search and seizure as described above.

69.     As direct and proximate result of the code of silence known to the CITY OF CHICAGO, the Defendant-Officers continued to engage in robbery and illegal searches, including but not limited to the illegal search and seizure of Plaintiff as described above.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)     Enter judgment against the CITY OF CHICAGO,

b)     Award Plaintiff compensatory damages, as determined at trial,

c)     Award Plaintiff attorney's fees and costs,

d)     Award such other and additional relief that this Honorable Court deems just and

equitable.

## COUNT IV
**(Indemnification Claim pursuant to 745 ILCS 10/9-102)**

70.     The acts of the Defendant-Officers described in the above claims were willful and wanton, and committed in the scope of employment.

71.     Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF CHICAGO is liable for any judgments for compensatory damages in this case arising from the Defendant-Officers' actions.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant CITY OF CHICAGO to indemnify the Defendant-Officers for any judgment for compensatory damages in this case arising from their actions.

**Jury Trial Demanded**

Respectfully submitted,

/s/ Louis J. Meyer
*Counsel for the Plaintiff*

Louis J. Meyer
Daniel P. Kiss
MEYER & KISS, LLC
53 West Jackson Blvd., Suite1735
Chicago, Illinois 60604
312.765.0100
louismeyer@meyerkiss.com
dankiss@meyerkiss.com

Darryl A. Goldberg
Law Offices of Darryl A. Goldberg
33 North Dearborn Street, Suite 1830
Chicago, Illinois 60602
773.793.3196
dgoldberg@goldbergdefense.com